UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
WILLIE JACKSON,                     :
                                    : 04 Civ. 9497 (PKC)(THK)
                 Petitioner,        :
                                    :
                                    :
       -against-                    :
                                    :        **REPORT AND**
                                    :        **RECOMMENDATION**
SUPERINTENDENT,                     :
                                    :
                 Respondent.        :
------------------------------------X
**TO: HON. P. KEVIN CASTEL, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

     Petitioner Willie Jackson was convicted on September 10, 1997

of Burglary in the Second Degree (New York Penal Law § 140.25[2]),

following a jury trial in New York State Supreme Court, New York

County, and was sentenced as a persistent violent felony offender

to an indeterminate term of imprisonment of from eighteen years to

life.  Petitioner now seeks habeas corpus relief, pursuant to 28

U.S.C. § 2254, claiming that his conviction resulted from the

violation of his federal constitutional rights, because he was: (1)

denied the right to testify before the grand jury; (2) denied the

right to effective assistance of counsel when his attorney

preempted his decision to appear before the grand jury; (3) denied

the right to a fair trial when a police officer testified about

inculpatory statements made by Petitioner upon his arrest; (4)

denied the right to a fair trial because his attorney was not given

pretrial notice of the inculpatory statements; and (5) denied the

right to a fair trial because of several acts of alleged

prosecutorial misconduct.   Petitioner also asserts, without elaboration, several other grounds for habeas relief, including: "perjury, jury selection, instruction to jury, missing witness, double-jeopardy, probable cause, undul[y] harsh sentence [and] lesser included offense."  <u>See</u> Amended Petition for Habeas Corpus, filed Oct. 18, 2005 ("Am. Pet."), ¶ 13.)

This proceeding was referred to this Court for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons that follow, the Court recommends that the Petition be denied and the action be dismissed with prejudice.

**BACKGROUND**

<u>The Crime</u>

On September 8, 1996, at around 2 p.m., Jack Rodriguez looked out of his fourth-floor bedroom window and saw a man climbing up a courtyard wall behind his apartment building, on West 21st Street in Manhattan.  (Trial Transcript, dated July 14-18 and July 21, 1997 ("T. ___."), at 61-63, 67-72, 107.)  Rodriguez described the man as a 5'7" to 5'8" African-American male, wearing a blue shirt and dark pants and carrying a white plastic bag.  (T. 72-73.) According to Rodriguez, the man walked along the top of the wall and eventually disappeared from his view.  (T. 78-79.)  Shortly thereafter, the man came back into Rodriguez's view, and Rodriguez observed the man retrace his steps along the wall. (T. 78-79, 92, 96.)  Rodriguez then instructed his daughter to call 911, while he

2

continued to watch the man in the courtyard. (T. 80.) Rodriguez reported the man's actions to his daughter, who relayed them to a 911 operator. (T. 80-83, 113-15.) At some point, Rodriguez's daughter became anxious and excited. Rodriguez took the telephone from her, and repeated what he had observed to the operator. (T. 113.) Rodriguez described the man and said that he believed a burglary had occurred. (T. 80-83, 113-15.)

Police Officers Thomas Loomis and Russell Spatafora, who were on duty in the vicinity of Rodriguez's building, responded to a call from the dispatcher to investigate a burglary in process at 231 West 21st Street. (T. 210, 305.) The two officers met outside the building, and then ascended five or six flights of stairs to the roof. (T. 211, 273, 306.) From this vantage point, Loomis and Spatafora observed a man, matching Rodriguez's description, running through a courtyard in the direction of Seventh Avenue. (T. 216-17, 274, 314.) The two officers began descending a fire escape in an attempt to intercept the man. (T. 218, 316.) When the officers were half-way down the fire escape, the man looked up, saw the officers and began running with what appeared to be a black plastic bag in his left hand. (T. 218-19, 278, 318-19.) The man then scaled a six-foot cinder block wall and disappeared. (T. 321-22.)

Spatafora and Loomis followed the man over the wall and into an adjacent courtyard. (T. 323.) There they observed a partially opened door, and entered what turned out to be a boiler room. (T.

219-220, 282, 325.)  A man, subsequently identified as Petitioner, was discovered crouched behind a cement wall near the boiler, and was arrested. (T. 221, 326.) The officers also discovered a black plastic shopping bag containing several items of jewelry, on the floor near where Petitioner had been hiding.  (T. 223, 328-29.) The officers also recovered a white plastic bag in the courtyard outside the boiler room.  (T. 330, 338.)

While Petitioner's arrest was being processed at the Tenth Precinct, Susan Conley made a police report stating that several items were missing from her apartment at 221 West 20th Street.  (T. 167, 179, 345.)  Conley spoke to Spatafora, who showed her the items recovered from the black plastic bag.  She identified all the items as belonging to her.  (T. 179-80, 345.)

Grand Jury Indictment

Petitioner was arraigned on September 9, 1996 on a felony complaint charging him with Burglary in the Second Degree. Assigned-counsel Christopher Johnson filed a written notice of Petitioner's intention to testify before the grand jury, pursuant to New York Criminal Procedure Law § 190.50. (See Affirmation of Christopher J. Beard, Esq., in Response to Defendant's C.P.L. § 190.50 Motion, dated Nov. 1, 1996 ("Beard Aff."), attached as Exhibit ("Ex.") B to Declaration of Malancha Chanda, Esq. in Opposition to Petition for a Writ of Habeas Corpus, dated Mar. 10, 2006 ("Chanda Decl."), ¶ 4.) Petitioner was produced to testify

before the grand jury on September 11, 1996. (See id. ¶ 5.)
However, in two separate telephone calls on that date, Johnson
informed the prosecutor that Petitioner no longer wished to testify
and, thus, he was withdrawing the grand jury notice. (See id.) On
September 12, the grand jury voted to indict Petitioner on a charge
of Burglary in the Second Degree. (See id.)

Petitioner was arraigned on the burglary charge on October 1,
1996. At the arraignment, Johnson told Petitioner that he had
withdrawn the grand jury notice because he thought it was in
Petitioner's best interest, despite Petitioner's wishes to the
contrary. (See Affirmation of Jesse Barab, Esq., dated Oct. 23,
1996 ("Barab Aff."), attached as Ex. A to Chanda Decl., ¶ 6.)[1]
Petitioner requested the appointment of new counsel, but the court
denied the request. (See id. ¶ 7.)

Petitioner renewed his request for new counsel on October 18,
1996. (See Barab Aff. ¶ 8.) The request was granted and Jesse
Barab was appointed as defense counsel. (See id.) On October 23,
1996, Barab filed a motion to dismiss the indictment, pursuant to
C.P.L. § 190.50, alleging that Petitioner had been deprived of his
right to testify before the grand jury, and that Johnson's
unilateral decision to withdraw the grand jury notice constituted
ineffective assistance. (See id. ¶ 8.) The prosecution opposed the

---

[1] Petitioner claims that Johnson did not explain that
Petitioner had only five days from arraignment to bring a motion
for violation of C.P.L. § 190.50. (See Barab Aff. ¶ 6.)

motion on the grounds that it was untimely and that it had fulfilled its obligation to provide Petitioner with an opportunity to testify. (<u>See</u> Beard Aff. ¶ 6.)

In a written decision dated November 8, 1996, the New York Supreme Court, New York County, noted that although the motion to dismiss the indictment was untimely, it would be considered in the interest of justice. (<u>See</u> <u>New York v. Jackson</u>, Ind. No. 8018/96, (N.Y. Sup. Ct. Nov. 8, 1996) (Bell, J.), attached as Ex. C to Chanda Decl.)  The court held that the prosecution had satisfied its obligation "to accord [Petitioner] a reasonable time to exercise his right to appear as a witness" pursuant to § 190.50, and that Johnson "had apparent authority to withdraw the cross-grand jury notice."  Because the prosecution was "without fault in the matter," the court denied the motion to dismiss the indictment. (<u>Id.</u>)

Petitioner's First Trial

Petitioner proceeded to trial on March 20, 1997.  After the jury had been charged and had deliberated for almost six hours, the foreman informed the court that the jurors were deadlocked. (Trial Transcript, dated Mar. 25, 1997 ("T1. __."), at 359.)  Petitioner moved for a mistrial. (T1. 359.) The court denied the motion and instructed the jury to resume deliberations. (T1. 359, 361-62.)

After deliberating for an additional period of time, the foreman again informed the court that there was "no hope of either

faction reaching a compromise honestly." (T1. 385) The court assembled the jury and asked whether (1) any additional instruction or readback of testimony would help the jury reach a verdict; (2) if given additional time, the jury would be able to reach a verdict; and (3) each of the jurors believed that no further deliberations would resolve their differences of opinion. (T1. 385-86.) In a written response, the jurors answered "no," "no," and "yes," respectively to the questions. (T1. 389.) Petitioner's counsel suggested that the jurors could change their minds in the morning, but the court concluded that further deliberations would be futile, declared a mistrial, and discharged the jury. (T1. 389, 392.)

<u>Petitioner's Second Trial</u>

Petitioner's retrial began on July 14, 1997.[2] Petitioner was represented by appointed-counsel Kenneth Canfield.

<u>The Prosecution's Case</u>

The prosecution presented testimony from Rodriguez, who testified about what he observed from his bedroom window on September 8, 1996, and Conley, who described the items taken from

---

[2] In a pretrial motion, Petitioner moved to dismiss the indictment based on double jeopardy, arguing that there was "no manifest necessity to declare a mistrial at the first trial." (T. 3.) After initially reserving decision on the motion, the court later denied it, concluding that the first trial court had not abused its discretion in declaring a mistrial. (T. 98.)

her apartment and the circumstances surrounding her police report.[3] (T. 57-121, 166-94.)  Officers Loomis and Spatafora testified about the events leading up to Petitioner's arrest.[4]  (T. 205-28, 262-366.)

In his cross-examination of Spatafora, defense counsel posed several questions about the officer's use of physical force in

---

[3] Rodriguez's daughter did not testify.  Petitioner's attorney initially argued that she was unavailable and moved for a missing witness charge. (T. 247.) Defense counsel was subsequently put in touch with the daughter. After interviewing the woman, defense counsel informed the court that "[Petitioner] insists that I call her. [However] [a]s an attorney, I cannot give a good faith basis to call her to give relevant testimony . . ." (T. 546.)  Defense counsel then made an offer of proof to the court as to why the woman should be called to testify.  (T. 547.)  The court considered the offer, ruled that the woman should not testify, and denied Petitioner's motion for a missing witness charge. (T. 551.)

[4] Before the officers took the stand, Petitioner complained to the court that Spatafora had improperly listened to Rodriguez's testimony through the courtroom doors and discussed it with Loomis. (T. 136-37.)  Susan Calvello, a defense attorney and acquaintance of defense counsel (Canfield), told the court, in an in limine conference, that she had observed Spatafora in the vestibule area outside the courtroom listening to Rodriguez's testimony.  (T. 153.) She said she left briefly to attend to a case in another courtroom, and when she returned she saw Spatafora talking to Loomis about defense counsel's cross-examination of Rodriguez.  (T. 153.)  Calvello said she chastised Spatafora for his behavior, and he responded by asking "what she was going to do about it."  (T. 154.)  Calvello then sent a note to defense counsel about the alleged improprieties. (T. 154.)

The court questioned Spatafora and Loomis about Calvello's allegations, out of the presence of the jury, and both denied listening to Rodriguez's testimony.  (T. 139-42.) Defense counsel moved for a mistrial (T. 158), which was later denied (T. 234). The court, however, allowed defense counsel to question the officers on the stand about Calvello's accusations. (T. 163-202.) Both again denied any impropriety.  (T. 297-99, 363-65.)

arresting Petitioner.   Defense counsel then asked:

DEFENSE COUNSEL:     Did [Petitioner] ask to go to
                     the hospital for medical
                     attention?

SPATAFORA:           The only thing [Petitioner]
                     asked for is I didn't make it a
                     felony, just make it a
                     misdemeanor.

DEFENSE COUNSEL:     The question is, Officer, did
                     he ask to go to the hospital?

SPATAFORA:           No, he did not.

DEFENSE COUNSEL:     Did he threaten to report you
                     to the Civilian Complaint
                     Review Board?

SPATAFORA:           Just begged that I didn't make
                     it a felony because he had too
                     many felonies as it was.

(T. 354-55.)

Defense counsel immediately moved to strike Spatafora's
response.   (T. 355.)   The court granted the motion, struck the
answer, and instructed the jury to disregard it.   (T. 355.) Defense
counsel subsequently moved for a mistrial based upon Spatafora's
testimony about Petitioner's prior convictions, alleging that the
defense had not been given notice of the statements, and that the
statements were unresponsive to counsel's question and highly
prejudicial.[5]   (T. 367-68.)   The court denied the motion for a

---

[5]   Defense counsel argued that Petitioner had not yet
decided whether to take the stand and abide by the judge's
earlier Sandoval ruling, and that Spatafora's comments meant "the
cat is out of the bag and the jury is aware my client has several
felonies."   (T. 367-68.)(Petitioner had been convicted of two

9

mistrial, agreeing with the prosecutor that no notice was required because the prosecution had not intended to introduce the statements at trial, and that, in any event, the testimony had been stricken, and the jury instructed to disregard it.  (T. 370-71.)

Petitioner's Case

After testimony from Calvello, who told the jury about her observation of the police witnesses in the courtroom vestibule (T. 373), Petitioner took the stand.  On direct examination, Petitioner gave his account of the events of September 8, 1996.  Petitioner testified that he was on the block between 20th and 21st Streets, looking through trash cans for bottles and cans, as well as items he could repair and sell. (T. 389-90)  He was approached by Spatafora and accused of scaling a wall, and after denying that he had climbed the wall, was subjected to verbal and physical abuse by Spatafora and Loomis. (T. 395-98.)  Petitioner also testified that he had not entered the courtyard behind Conley's apartment, and could not have climbed the wall around her courtyard or walked on top of it because of a severely injured leg that required him to use a cane. (T. 388-89, 392-95.)  Petitioner testified that he had never seen the plastic bag or jewelry that Spatafora and Loomis claimed to have found near him, and insisted that the officers were

_____

felonies in Queens County – on April 30, 1991 and March 31, 1993. (T. 460.)) Defense counsel also argued that the court had not "explore[d] <u>Miranda</u> voluntariness of those statements, . . . ." (T. 368.)

10

lying. (T. 418.)

During cross-examination, Petitioner testified that during the alleged beating by the officers, he told the officers he planned to file a "multi-million-dollar" lawsuit against the City of New York. (T. 453.) The prosecutor then asked Petitioner why, in the ten months since his arrest, he had not filed a complaint with the New York City Police Department ("NYPD"), the New York City Civilian Complaint Review Board ("Review Board"), or the New York County District Attorney's Office ("DA's Office"). (T. 453-54.) Petitioner testified that he had attempted to file complaints with the NYPD and the DA's Office, but that he had "messed up the paperwork." (T. 453-54.) He said he not filed a complaint with the Review Board because he had been advised by a lawyer to find witnesses to the incident and had been unable to do so. (T. 454.)

The prosecution continued:

> So in effect, ten months after you say two police officers beat you, the only official action that you have taken was a civil lawsuit that had the paperwork returned because you didn't fill it out right?

(T. 456-57.)

After Petitioner reiterated that he had no witnesses, nor money to pay for a private investigator to locate potential witnesses, the prosecution asked, "[w]ell, then how do you intend to ever prove your civil charges?" (T. 457-58.)

Petitioner also was asked on cross-examination about his numerous prior convictions. In answering a question about a 1990

11

conviction for Criminal Mischief, in which Petitioner had been accused of breaking a car window, Petitioner stated that the arresting police officer had falsely accused Petitioner of breaking the window.  (T. 461-62.) The prosecutor then asked: "So you run into a lot of officers who just don't tell the truth, do they?" Defense counsel objected, and the court sustained the objection. (T. 462.) In responding to a question about a conviction for Criminal Trespass, in which Petitioner had been accused of entering a residential building without permission, Petitioner testified that he had entered the building because "[t]he door was open" and that he "never had any problems" doing so. (T. 465-66.) The prosecutor then asked:

> PROSECUTOR:      You will go in to where the doors are open?
>
> PETITIONER:      No. I go in where I know areas at.
>
> PROSECUTOR:      Like the area back here between 7th and 8th Avenues, right?
>
> PETITIONER:      No. Wrong.

(T. 467.)

Petitioner was next asked about a 1992 conviction for Petty Larceny, where Petitioner stole property out of a car.  (T. 467.) The prosecutor asked: "So you know [Petitioner], you will do things for yourself, correct?"  (T. 468.) After Petitioner answered, "no," the court interjected and instructed the jury that the testimony elicited about Petitioner's past crimes could be used only "in

evaluating his credibility, his believability . . . . You may not consider it on the question of whether or not he is guilty or not guilty of the crime he is charged with now." (T. 468-69.)

<u>Summations</u>

During his summation, defense counsel told the jury that Petitioner's testimony was "not designed to prove his innocence," and that the burden of proof remained with the prosecution. (T. 653-54.) In response, the prosecutor conceded that Petitioner did not bear the burden of proof, and went on to say:

> [I]f you determine that [Petitioner] testified falsely about what happened that day in that he did not tell you the truth about Sunday, September 8, it doesn't just stop there.
>
> [Defense counsel] said just if you want to throw it out the window and that's the end of it. Well, no, that's not the end of it. Because after you look at [Petitioner]'s testimony . . . if you find based on everything that [Petitioner] said that you don't believe, 'Well, he wasn't telling us the truth.' Don't stop there. You now have to ask yourselves the next logical question, 'If he didn't tell us the truth, why?'
>
> And the answer is real simple . . . Because if he told you the truth we wouldn't be here. It wouldn't be necessary because he'd be convicted. Someone who comes in and doesn't tell you the truth about an entire incident from start to finish has something to hide. And what [Petitioner] has to hide here is the fact that he knows if you focus on the evidence, if you look at what the People presented in this case, you will find him in very short order guilty of Burglary in the 2nd degree.

(T. 660-63.)

In reference to Petitioner's testimony about his 1990 conviction, in which he claimed the police lied about his having

broken a car window, the prosecutor stated:

> Once again what did he say? 'The cops lied. I wasn't – I
> didn't really break the window. The cops lied.' That
> seems to be a common theme with [Petitioner], keeps
> running into police officers who just keep lying about
> him.

(T. 672.)

The prosecutor also revisited Petitioner's contention that he

had been beaten by Spatafora and Loomis.

> Ladies and Gentlemen, the reason [Petitioner] has never
> filed any charges against these officers, any complaints
> or any allegations with any official organization, is
> because it didn't happen.  He's making it up.  He is
> hoping that by throwing out at you, that, you know,
> 'These two offiers are racists who simply beat me,' that
> you're just going to say, 'Oh, gee, somebody is claiming
> racism.  We're going to have to – – .  No. Don't fall for
> that.  Don't get into that trap.

(T. 667-68.)

<u>Jury Charge and Verdict</u>

The court instructed the jury, <u>inter</u> <u>alia</u>, that any testimony

stricken from the record should not be considered (T. 721); that

Petitioner's prior convictions were not proof of propensity, but

were admitted solely for assessing credibility (T. 727-28); that

Calvello's testimony was relevant only to the officers' credibility

and the jury was not to determine whether misconduct had occurred

(T. 730-31); and that the burden to prove every element of the

crime was on the prosecution and never shifted to the defense (T.

735).  In addition to charging the jury on the elements of the

indicted count of Burglary in the Second Degree, the court also

14

charged the jury on the lesser-included offense of Criminal Trespass in the Third Degree. (T. 750-57.)

The jury found Petitioner guilty of Burglary in the Second Degree. (T. 804.)

Sentencing

A sentencing hearing was held on September 10, 1997. Immediately prior to the imposition of sentence, Petitioner moved to set aside the jury's verdict on the grounds that Spatafora and Loomis had engaged in misconduct by eavesdropping on and discussing Rodriguez's testimony, and had committed perjury by not admitting to doing so. (Sentencing Hearing Transcript, dated Sept. 10, 1997 ("S. __."), at 23-25.) Petitioner also moved to set aside the verdict on double jeopardy grounds, renewing his earlier objection to the first trial court's decision to declare a mistrial, and his subsequent retrial. (S. 24-25.) The court denied the motions and sentenced Petitioner as a persistent violent felony offender to a prison term of from eighteen years to life. (S. 44.)

Petitioner's Direct Appeal

On direct appeal, Petitioner's appellate counsel argued that: (1) the trial court erred in denying Petitioner's C.P.L. § 190.50 motion because Petitioner's first trial counsel deliberately overruled his decision to testify before the grand jury, thus depriving Petitioner of his right to testify under New York State law, and his right to effective assistance of counsel under the

15

Sixth and Fourteenth Amendments; (2) Petitioner was deprived of a fair trial by Spatafora's testimony revealing Petitioner's statement about his prior felony convictions; and (3) Petitioner had been deprived of his right to a fair trial by various acts of prosecutorial misconduct during cross-examination of Petitioner and during summation.  Appellate counsel argued that the prosecutor had "advocated a shifting of the burden of proof; misused pre-trial silence as evidence of guilt; espoused a propensity argument; and denigrated the defense case."  (See Brief of Defendant-Appellant, dated June 2000 ("Def.'s App. Brf."), attached as Ex D to Chanda Decl.)

Petitioner also filed a pro se supplemental appellate brief. (See Pro Se Supplemental Brief for Defendant-Appellant, undated ("Supp. Brf."), attached as Ex. D to Chanda Decl.)  The brief largely consisted of non-contextual excerpts from, and citations to, the transcript of his trial and other related proceedings. (See id. at 3-54.)  In a two-page summary of his arguments, Petitioner set forth: (1) a general statement of a court's obligations in charging a jury; (2) a general statement about the circumstances under which a court should give a missing witness charge; (3) a claim that the first trial judge should not have declared a mistrial without his consent, and that his retrial violated double jeopardy; (4) a claim that the first trial judge had erroneously failed to charge the jury on the lesser-included

offense of criminal trespass; (5) a general recitation of the law governing challenges of jurors for cause; (6) a claim that Beard, Spatafora, Loomis and Rodriguez gave "false statements" at trial; and (7) a claim that there was no probable cause for his arrest. (See id. 1-2.) Petitioner also argued that his sentence was unduly harsh and violated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000) and Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428 (2002). (See id. 55-65.)

In a decision dated April 3, 2003, the Appellate Division unanimously affirmed Petitioner's conviction. See People v. Jackson, 304 A.D.2d 327, 756 N.Y.S.2d 580 (1st Dep't 2003). The court held that: (1) the trial court properly denied Petitioner's § 190.50 motion because Petitioner had been provided with an opportunity to testify before the grand jury; (2) the claim of ineffective assistance of counsel, "based on his counsel's withdrawal of his request to appear before the grand jury" was not reviewable on the present record and, in any event, did not alone constitute ineffective assistance of counsel; and (3) Spatafora's testimony about Petitioner's inculpatory statements did not deprive Petitioner of a fair trial because the "witness's response was not unresponsive to counsel's questions," and had, nonetheless, been stricken by the court. See id.

The court also found that Petitioner's claims of prosecutorial misconduct were unpreserved because "defendant [had] not []

17

objected to most of the alleged improper questions and comments, or [] made only general objections." <u>Jackson</u>, 304 A.D.2d at 327, 756 N.Y.S.2d at 580.  Lastly, the court found Petitioner's "remaining arguments, including those contained in his pro se supplemental brief," unavailing.  <u>See</u> <u>id.</u>  On October 9, 2003, Petitioner's application for leave to appeal to the New York Court of Appeals was denied.  <u>See</u> <u>People v. Jackson</u>, 100 N.Y.2d 643, 769 N.Y.S.2d 208 (2003).

<u>Petitioner's Habeas Petition</u>

In his petition to this Court for a writ of habeas corpus, Petitioner again asserts the claims raised in his primary appellate brief and in his <u>pro</u> <u>se</u> supplemental brief.  (<u>See</u> Am. Pet.) Respondent concedes that the Petition is timely and that Petitioner has properly exhausted the claims raised by appellate counsel on direct appeal, as well as the claims of double jeopardy, a Fourth Amendment violation, and excessive sentencing raised in Petitioner's <u>pro</u> <u>se</u> supplemental brief.  (<u>See</u> Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated Mar. 10, 2006 ("Resp't's Mem.") at 23-24.) Respondent asserts, however, that the balance of the claims made in Petitioner's <u>pro</u> <u>se</u> brief are unexhausted and, in any event, without merit.  (<u>See</u> <u>id.</u> at 24.)

18

**DISCUSSION**

I.   AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000); accord Leslie v. Artuz, 230 F.3d 25, 32 (2d Cir. 2000); Clark v. Stinson, 214 F.3d 315, 320 (2d Cir. 2000). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. See Williams, 529 U.S. at 412, 120 S. Ct. at 1523; Leslie, 230 F.3d at 32.

"The 'unreasonable application' standard is independent of the 'contrary to' standard . . . [and] means more than simply an 'erroneous' or 'incorrect' application" of federal law. Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (citing Williams, 529 U.S. at 411, 120 S. Ct. at 1522).   A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identifies the governing legal rule, but applies it in an unreasonable manner to the facts of a particular case. See Williams, 529 U.S. at 413, 120 S. Ct. at 1523.   The Second Circuit has noted that "Williams also made clear that a federal habeas court may permissibly conclude that federal law has been unreasonably applied by the state court even though not all reasonable jurists would agree that the state court's application was unreasonable." Henry, 409 F.3d at 68.   Thus, a court should inquire as to whether the state court's application of federal law was "objectively unreasonable," falling "somewhere between merely erroneous and unreasonable to all jurists." Id. (internal quotations omitted).

Further, under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v.

<u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003).  A state court's decision adjudicated on the merits and based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

II.  <u>Petitioner's Claims</u>

    A.   <u>Denial of Right to Testify Before the Grand Jury</u>

    Petitioner first claims that the trial court erred in denying his C.P.L. § 190.50 motion to dismiss the indictment because he was deprived of his right to testify before the grand jury.

    There is no federal constitutional right to appear before a state grand jury, as the Fifth Amendment's grand jury indictment clause is not applicable to the states by incorporation through the Fourteenth Amendment. <u>See</u> <u>LanFranco v. Murray</u>, 313 F.3d 112, 118 (2d Cir. 2002) (citing <u>Branzburg v. Hayes</u>, 408 U.S. 665, 688 n. 25, 92 S. Ct. 2646, 2660 n. 25 (1972)); <u>Price v. Grenier</u>, No. 98 Civ. 2601 (LTS) (MHD), 2003 WL 22890404, at *6 (S.D.N.Y. Oct. 16, 2003) (citing <u>Gibbs v. New York</u>, No. 01 Civ. 5146 (DLC), 2002 WL 31812682, at *4 (S.D.N.Y. Dec. 12, 2002)) (noting that opportunity to testify before the grand jury is a right created by state law alone).  Thus, Petitioner's grand jury claim arises solely out of state law and is not cognizable on federal habeas review.  <u>See</u> <u>Velez v. Ercole</u>, No. 06 Civ. 334 (LBS), 2006 WL 2742046, at *5

(S.D.N.Y.  Sept. 26, 2006); Gibbs, 2002 WL 31812682, at *4; see
also Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480
(1991) ("federal habeas corpus relief does not lie for errors of
state law"); DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004)
("federal   courts   must   of   course   defer   to   state-court
interpretations   of   the   state's   laws   so   long   as   those
interpretations are themselves constitutional") (quoting Davis v.
Strack, 270 F.3d 11, 123 (2d Cir. 2001)).  Moreover, "'claims of
deficiencies   in   the   state   grand   jury   proceedings'   are   not
cognizable in a habeas corpus proceeding when they are necessarily
'rendered harmless' by a subsequent conviction by a petit jury."
Galberth v. People of State of New York, No. 06 Civ. 5728 (NRB),
2007 WL 633953, at *4 (S.D.N.Y. Feb. 28, 2007) (quoting Lopez v.
Riley, 865 F.2d 30, 32 (2d Cir. 1989)).[6]

Because Petitioner's grand jury claim is not based upon any
right guaranteed by federal law, and in any event, was "rendered
harmless" by his later jury conviction, it is not cognizable on
federal habeas review.  Accordingly, the state court's rejection of
this claim was not contrary to, or an unreasonable application of,

---

[6] The claim has no merit under New York law as well, as the
trial court found that Petitioner's attorney withdrew the request
for Petitioner to testify before the grand jury and the
prosecutor was without fault in the matter. See People v.
Dickens, 259 A.D.2d 450, 450-51, 688 N.Y.S.2d 509, 510 (1st Dep't
1999) (defendant's failure to consent to his [] attorney's sound
strategic decision that he not testify before the grand jury
would not support dismissal of the indictment.).

clearly established Federal law.  This Court therefore recommends that Petitioner's grand jury claim be dismissed.

B.   Ineffective Assistance of Counsel

       Petitioner claims that he was denied the effective assistance of counsel when his first trial attorney preempted his right to testify before the grand jury.  The Appellate Division held that this claim was "not reviewable on the present record," and, in any event, "standing alone, d[id] not constitute ineffective assistance of counsel."  Jackson, 304 A.D.2d at 327, 756 N.Y.S.2d at 580.

       In order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test.  See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); LanFranco, 313 F.3d at 118.  First, he must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688, 104 S. Ct. at 2064.  Second, a habeas petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., 466 U.S. at 694, 104 S. Ct. at 2068.  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  Id., 466 U.S. at 700, 104 S. Ct. at 2071.

       In seeking leave to appeal to the New York Court of Appeals, Petitioner argued that because Johnson deliberately disregarded

23

Petitioner's decision to testify before the grand jury, his representation was deficient per se. (See Letter of Nancy E. Little, Esq. to Court of Appeals, dated May 14, 2003 ("Leave Ltr."), attached as Ex. I to Chanda Decl., at 3-4.)[7]  This Court need not assess the reasonableness of Johnson's decision to cancel Petitioner's grand jury appearance, because even if Johnson's actions "fell below an objective standard of reasonableness," Petitioner clearly cannot meet the second prong of Strickland. Petitioner was "afforded a jury trial and was convicted by a petit jury after testifying before it . . . . Any prejudice suffered by petitioner was rendered harmless by his conviction at trial by the petit jury, which assessed his guilt under a heightened standard of proof."  Turner v. Fisher, No. 01 Civ. 3251 (JBW), 2003 WL 22284177, at *6 (E.D.N.Y. Aug 20, 2003) (citing Lopez, 865 F.2d at 32, and failing to find ineffective assistance of counsel where attorney waived, without petitioner's consent, petitioner's right to testify before the grand jury).  In other words, Petitioner fails to demonstrate that there is a "reasonable probability that, but for" Johnson's actions to prevent Petitioner from testifying

_____

[7] In People v. Wiggins, 89 N.Y.2d 872, 873, 653 N.Y.S.2d 91, 92 (1996) the Court of Appeals held that "[d]efense counsel's failure to timely facilitate defendant's intention to testify before the Grand Jury does not, per se, amount to a denial of effective assistance of counsel . . . ."  Appellate counsel argued that Wiggins was not controlling because, unlike Wiggins, defense counsel deliberately overrode the defendant's decision to testify before the grand jury. (See Leave Ltr. at 3.)

before the grand jury, "the result of [Petitioner's trial] would have been different." See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because Petitioner cannot satisfy the two-pronged Strickland test for ineffective assistance of counsel, the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law.  Therefore, this Court recommends that Petitioner's ineffective assistance of counsel claim be dismissed.

### C.   Petitioner's Inculpatory Statements

Petitioner claims he was deprived of a fair trial because the court should have declared a mistrial after Spatafora testified that, while being arrested, Petitioner asked the officers to "make it a misdemeanor," because "he had too many felonies as it was." Petitioner further argues, in a second, but related, claim, that he was denied a fair trial because he was not given notice of the use of the inculpatory statements as required under New York Criminal Procedure Law § 710.30.[8]

---

[8] That provision reads, in pertinent part:

Whenever the people intend to offer at a trial . . . evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . . , they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

Such notice must be served within fifteen days after arraignment and before trial, and upon such service the

As an initial matter, Petitioner's claim that the prosecutor failed to comply with the notice requirements of C.P.L. § 710.30, is not subject to habeas review.  See Brown v. Harris, 666 F.2d 782, 785 (2d Cir. 1981) (noting "[Petitioner] cites no case indicating that [C.P.L. 710.30], or that a notice requirement in general, is constitutionally mandated"); Smith v. Artus, No. 03 Civ. 9819 (AKH), 2005 WL 1661104, at *7 (S.D.N.Y. July 14, 2005) (citing Ventura v. Artuz, No. 99 Civ. 12025 (AJP), 2000 WL 995497, at *12 (S.D.N.Y. July 19, 2000) (violation of § 710.30 is "clearly a state law issue and is not cognizable under federal habeas review")).

The only cognizable issue before this Court, insofar as Spatafora's testimony is concerned, is whether Petitioner's right to a fair trial was violated by Spatafora's testimony and the trial court's refusal to declare a mistrial after the officer testified about Petitioner's post-arrest statements.  See Estelle, 502 U.S. at 68, 112 S. Ct. at 480 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

In the instant case, the trial court sustained defense counsel's objection to Spatafora's testimony about Petitioner's potentially inculpatory statements, struck the testimony from the

---

defendant must be accorded reasonable opportunity to move before trial, . . . to suppress the specified evidence.

record, and instructed the jury to disregard it.  The Court must assume that the jurors understood and followed the judge's instructions. <u>See</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 540, 113 S. Ct. 933, 939 (1993) ("'[J]uries are presumed to follow their instructions.'") (quoting <u>Richardson v. Marsh</u>, 481 U.S. 200, 211, 107 S. Ct. 1702, 1709 (1987)); <u>Spencer v. Texas</u>, 385 U.S. 554, 562, 87 S. Ct. 648, 653 (1967) ("[T]he jury is expected to follow instructions in limiting . . . evidence to its proper function."); <u>U.S. v. Snype</u>, 441 F.3d 119, 129 (2d Cir. 2006) (same); <u>Urena v. Lape</u>, 373 F. Supp. 2d 449, 455-56 (S.D.N.Y. 2005) (same).

Petitioner argues, however, that the jury instruction was insufficient because the "prejudice" resulting from Spatafora's testimony "could be cured only by a mistrial, and not by instructions that the jury merely ignore the answer." (<u>See</u> Def.'s App. Brf. at 41.)  In support of this argument, Petitioner cites <u>Bruton v. United States</u>, 391 U.S. 123, 88 S. Ct. 1620 (1968) and <u>Jackson v. Denno</u>, 378 U.S. 368, 84 S. Ct. 1774 (1964), cases in which the Supreme Court recognized narrow exceptions to the principle that jurors are presumed to follow a court's instructions.  In <u>Bruton</u>, the petitioner, who had been prosecuted in a joint trial, argued that he had been unfairly prejudiced by the admission of a co-defendant's confession which inculpated the petitioner.  The trial court twice instructed the jury that the confession could be considered only against the co-defendant.

27

Nonetheless, the Supreme Court held that despite the limiting instruction, there was a "substantial risk" that the jury had "looked to the incriminating extrajudicial statements in determining petitioner's guilt," and thus admission of such a confession in a joint trial "violated petitioner's right of cross-examination" under the Sixth Amendment.  See id. at 126, 88 S. Ct. at 1622.[9]

Bruton and Jackson are inapposite to Petitioner's case for the simple reason that in those cases, the challenged statements were admitted into evidence for a limited purpose, and the question before the Supreme Court was whether the trial court's instructions were sufficient to prevent the jury from using the evidence in an impermissible, unconstitutional way.  In Petitioner's case, the statements at issue were clearly stricken from the record and the

---

[9] Likewise, in Jackson, the Court found unconstitutional a New York rule whereby courts were instructed to admit confessions in which there was a fair question as to their voluntariness and submit to the jury "the ultimate determination of [their] voluntary character . . . ."  327 U.S. at 377, 84 S. Ct. at 1781. If the jury determined that the confession was involuntary, it was to disregard it and reach its verdict on the remaining evidence in the case.

Noting that the jury only returns a verdict upon guilt or innocence, the Court held that "[i]t is impossible to discover whether the jury found the confession voluntary and relied upon it, or involuntary and supposedly ignored it."  Id. at 379, 84 S. Ct. at 1782.  The Court further noted that "reversal follows if the confession admitted into evidence is found to be involuntary in this Court regardless of the possibility that the jury correctly followed instructions and determined the confession, to be involuntary." 327 U.S. at 387 n. 14, 84 S. Ct. at 1786 n. 14.

jury was instructed to disregard them.  Petitioner cites no cases where the Supreme Court has held that striking allegedly improper testimony and instructing the jury to disregard it is insufficient to cure any prejudice that might result from the testimony.[10]

Thus, the New York courts' denial of Petitioner's claim of an unfair trial based upon the stricken testimony of Spatafora, was not contrary to, or an unreasonable application, of "clearly established" federal law.  Accordingly, this Court recommends that this claim be dismissed.

D.   Prosecutorial Misconduct

Petitioner claims that the prosecutor improperly shifted the burden of proof to the defense, used Petitioner's failure to file a police brutality report as consciousness of guilt, made a propensity argument, and denigrated the defense.  (See Def.'s App.

---

[10] Moreover, both the trial court and the appellate court found that Spatafora's comment was not unresponsive to defense counsel's question.  See T. 369; Jackson, 304 A.D.2d at 328, 756 N.Y.S.2d at 582.  Thus, even if the statements had been admitted in evidence, it is unclear that Petitioner could demonstrate any constitutional harm from the jurors learning about the fact of his prior convictions. See Estelle, 502 U.S. at 75 n. 5, 112 S. Ct. at 484 n. 5 (noting that the Supreme Court has not yet determined whether admission of "prior crimes" to prove propensity to commit crimes would violate the Due Process Clause); Brown v. Walsh, No. 04 Civ. 5756 (PAC)(MHD), 2006 WL 2517355, at *4 (S.D.N.Y. July 21, 2006) ("[T]he Supreme Court noted in Estelle, it has never held that the use of evidence of prior uncharged crimes to demonstrate predisposition offends due process, although its use for that limited purpose is precluded both by [Federal Rules of Evidence] 404(b) and by state law.").  Here the testimony did not even reveal the nature of the prior crimes, other than that they were felonies.

Brf. at 48.)  The Appellate Division rejected these claims, holding that they were unpreserved because Petitioner failed to "object[] to most of the alleged improper questions and comments, or . . . made only general objections." See Jackson, 304 A.D.2d at 328, 756 N.Y.S.2d at 582.

When a state appellate court directly determines that a claim is procedurally barred under state law, the independent and adequate state ground doctrine usually bars federal habeas review, because the last state court rendering a judgment expressly rested its denial of a claim on the petitioner's failure to meet a state procedural requirement. See Coleman v. Thompson, 501 U.S. 722, 729-730, 111 S. Ct. 2546, 2554 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995); see also Brown v. Miller, 451 F.3d 54, 56 (2d Cir. 2006) ("Federal habeas courts do not generally entertain arguments that were procedurally defaulted in the state court if the finding of default constitutes an 'independent and adequate state ground' for the state court's decision."). However, a procedural bar will be deemed adequate, "only if it is based on a rule that is firmly established and regularly followed by the state in question." See Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) (quoting Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)).

In the instant case, the Appellate Division found that Petitioner's claims of prosecutorial misconduct were unpreserved

because he failed to object, or made only general objections, to the prosecutor's comments or summation, thus failing to comply with New York's contemporaneous objection rule.  See New York Criminal Procedure Law § 470.05[2].[11] It is well-settled that New York's contemporaneous objection/preservation requirement is an independent and adequate state procedural bar. See Garcia, 188 F.3d at 79 ("we have observed and deferred to New York's consistent application of its contemporaneous objection rules"); Vargas v. Keene, 86 F.3d 1273, 1280 (2d Cir. 1996) (failure to object to a prosecutor's summation has constituted a procedural bar to raising the claim on habeas review).[12]

The only way a petitioner can obtain review of a procedurally

---

[11] That provision reads, in pertinent part:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

[12] The procedural bar found by the Appellate Division is not undermined by its alternative holding that the prosecutor's cross-examination of Petitioner and summation were proper. See Harris v. Reed, 489 U.S. 255, 264 n. 10, 109 S. Ct. 1038, 1044 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding . . . as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision"); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved) (citing Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996)).

barred claim is if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750, 111 S. Ct. at 2565; accord Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004).  "[T]he cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." McClesky v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986)); accord Bloomer v. United States, 162 F.3d 187, 191 (2d Cir. 1998).  In the instant case, Petitioner has not argued, no less demonstrated, cause for his procedural default, nor does the record reflect any such cause.  As Petitioner "has failed to show cause, there is no need to address the prejudice requirement . . ." Levine, 44 F.3d. at 127.

Alternatively, Petitioner may still overcome a procedural bar by demonstrating that this is an "extraordinary case" in which "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 492, 106 S. Ct. at 2647; see also Lebron v. Mann, 40 F.3d 561, 564 (2d Cir. 1994). The Supreme Court has explained that this exception should "remain rare" and should be applied only in "extraordinary case[s]." Schlup v. Delo, 513 U.S. 298, 321, 115 S. Ct. 851, 864 (1995).

"[A]ctual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998). "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (citing Schlup, 513 U.S. at 327-28, 115 S. Ct. at 867-68 ("the petitioner must show that the constitutional error 'probably' resulted in the conviction of one who was actually innocent")). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324, 115 S. Ct. at 865; accord Doe v. Menefee, 391 F.3d 147, 161 (2d Cir. 2004). Petitioner, however, has offered no new evidence in an attempt to demonstrate actual innocence.

This Court therefore recommends that Petitioner's claims of prosecutorial misconduct be dismissed as procedurally barred.

        E.   Probable Cause/Fourth Amendment

Petitioner contends that Officers Spatafora and Loomis "never had probable cause to arrest [him] based on the 911 call." (See Supp. Brf. at 2.) The Court interprets this claim to be a Fourth

Amendment challenge to the trial court's findings at Petitioner's combined Mapp/Wade/Dunaway hearing[13], in which Petitioner sought to suppress all the property recovered at his arrest, as well as Rodriguez's post-arrest identification of Petitioner, as the fruit of an illegal arrest and search. (Hearing Transcript, dated Mar. 18, 1997, at 61.) The court denied the motion to suppress.

"Under Stone[v. Powell], Fourth Amendment violations are generally not cognizable on federal habeas, [unless] the State has failed to provide the habeas petitioner 'an opportunity for full and fair litigation of a Fourth Amendment claim.'" Wallace v. Kato, __ U.S. __, 127 S. Ct. 1091, 1099 n.5 (2007) (quoting Stone, 428 U.S. 465, 482, 96 S. Ct. 3037, 3046 (1976)). "Consequently, once it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002). In order for a petitioner to demonstrate that he lacked a full and fair opportunity to litigate his Fourth Amendment claims, he must show

---

[13] Mapp v. Ohio, 367 U.S. 643 (1961), is the seminal Supreme Court decision governing searches of arrestees; Dunaway v. New York, 442 U.S. 200 (1979), established the standards for lawful seizure and arrest; and United States v. Wade, 388 U.S. 218 (1967) addressed the standards applicable to identification procedures.

"a) [] the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (b) [] the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner fails to meet either prong of Capellan. New York provides a corrective procedure in the form of a suppression hearing, see New York Criminal Procedure Law § 710.10 et seq.; Capellan, 975 F.2d at 70 n. 1 ("'[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate.'")(internal quotation omitted)), and Petitioner took advantage of this opportunity. Petitioner's mere dissatisfaction with the court's rulings at the suppression hearing does not demonstrate an "unconscionable breakdown in the underlying process." Brown v. Connell, No. 04 Civ. 10152(PAC)(GWG), 2006 WL 1132053, at *6 (S.D.N.Y. Apr. 28, 2006). Accordingly, this Court recommends that Petitioner's Fourth Amendment claim be dismissed as non-cognizable under Stone.

F.   Double-Jeopardy

Petitioner claims that his retrial "violated [his] constitutional right against double jeopardy." (See Supp. Brf. at 1.) He further claims that the trial judge "declared a mistrial without my consent. There was no manifest necessity or request by

the defendant.  The jury was never hopelessly deadlocked, a full Allen charge was never given." (See id.)

As an initial matter, Petitioner is simply wrong in asserting that a defendant must consent to a mistrial.  See Arizona v. Washington, 434 U.S. 497, 505, 98 S. Ct. 824, 830 (1978) (When a mistrial is declared without the consent of the defendant, a new trial may be held without violating the double jeopardy clause if there was a "manifest necessity" for the mistrial."); Gori v. United States, 367 U.S. 364, 367-68, 81 S. Ct. 1523, 1526 (1961) ("Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.").

Under Arizona, a trial judge's decision to declare a mistrial is entitled to "special respect," and this Court may consider only whether the court exercised sound discretion in declaring a mistrial.  434 U.S. at 510, 514, 98 S. Ct. at 832, 834-35. Indeed, the Supreme Court has explained that "the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, [has been] long considered the classic basis for a proper mistrial."  Id. at 509, 98 S. Ct. at 832; see also United States v. Joyner, 201 F.3d 61, 83 (2d Cir. 2000) (same).

At Petitioner's first trial, the judge noted that the jury had deliberated for more than seven hours, more than twice as long as the trial testimony.  She further found that the case involved no complex questions of law or fact, and that the sole issue for the jury was of credibility and that no amount of additional time would help the jury reach a verdict. (T1. 390.)  Moreover, contrary to Petitioner's contention, the Court did give an <u>Allen</u> charge (T1. 361-63, 368-69), and specifically admonished the jurors that they "shouldn't abandon [their] consciously held views merely because [they're] in the minority or because it's getting late" (T1. 369).[14] The judge also asked the jury whether (1) any additional instruction or readback of testimony would help the jury reach a verdict; (2) if given additional time, the jury would be able to reach a verdict; and (3) each of the jurors believed that no further deliberations would resolve their differences of opinion. (T1. 385-86.)  In a written response, the jurors answered "no," "no," and "yes," respectively to the questions.  (T1. 389.)

At the outset, the Court notes that Petitioner moved for a mistrial after the jury had deliberated for fewer than six hours. (T1. 359.)  Thus, it is somewhat disingenuous for Petitioner to now

---

[14] <u>See</u> <u>Spears v. Greiner</u>, 459 F.3d 200, 205 (2d Cir. 2006) (noting that "when an <u>Allen</u> charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required").

suggest that the jury did not have enough time to fully consider the charge against him.   Nonetheless, Petitioner's conclusory opinion that there was no "manifest necessity" to declare a mistrial is insufficient to overcome the trial court's sound exercise of discretion in declaring a mistrial.   Accordingly, this Court recommends that Petitioner's claim of double jeopardy, based on his subsequent retrial, should be dismissed as without merit. See <u>Arizona</u>, 434 U.S. at 509, 98 S. Ct. at 832 (finding that after a trial judge discharges a "genuinely deadlocked jury," a defendant may be required to submit to a second trial. "The argument that a jury's inability to agree establishes reasonable doubt as to the defendant's guilt, and therefore requires acquittal, has been uniformly rejected in this country.").

G.   <u>Unduly Harsh Sentence</u>

Petitioner argues that his sentence of eighteen years to life imprisonment violates <u>Apprendi</u>, and its progeny <u>Ring</u>, because it was premised on two of his prior convictions that were not submitted to the jury.[15]   (<u>See</u> Supp. Brf. at 55.)

New York's persistent violent felony offender statute does not

---

[15] Petitioner was sentenced pursuant to New York's "mandatory" persistent felony offender statute, Penal Law § 70.08.   Under that law, the maximum term of imprisonment is life, and a sentencing court is instructed to, for a class C felony, fix a minimum sentence of between sixteen and twenty-five years. <u>See</u> New York Penal Law § 70.08 (b)(2), (b)(3)(b).   Under the New York Penal Law, Burglary in Second Degree is classified as a Class C felony.   <u>See</u> New York Penal Law § 140.25.

violate the principles set forth in Apprendi because the enhanced
sentence is based only on prior felony convictions, which is
expressly allowed under Apprendi.[16] See Cruz v. Filion, 456 F. Supp.
2d 474, 482 (S.D.N.Y. 2006) (citing Alston v. Woods, 04 Civ.
8017(WHP)(GWG), 2005 WL 3312818, at *4-5 (S.D.N.Y. Dec. 8, 2005));
James v. Artus, No. 03 Civ. 7612 (AJP), 2005 WL 859245, at *16
(S.D.N.Y. Apr. 15, 2005); cf. Miller, 451 F.3d at 54 and Brown v.
Greiner, 409 F.3d 523, 434-35 (2d Cir. 2005) (upholding New York's
"discretionary" persistent felony offender statute [New York Penal
Law § 70.10] under Apprendi (Greiner) and Ring (Miller)).

Because Petitioner was sentenced pursuant to a state law that
does not violate Apprendi and his sentence fell within the range
authorized by state law, this Court recommends that Petitioner's
sentencing claim be dismissed as without merit. See Galberth, 2007
WL 633953, at *5 ("[n]o federal constitutional issue is presented
where, as here, the sentence is within the range prescribed by
state law") (quoting White v. Keane, 969 F.2d 1381, 1383 (2d Cir.
1992)); Pena v. Rivera, No. 05 Civ. 3109 (LTS)(FM), 2006 WL

---

[16] See Apprendi, 530 U.S. at 490, 120 S. Ct. at 2362-2363.
("[o]ther than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, and proved beyond a
reasonable doubt."); see also United States v. Booker, 543 U.S.
220, 244, 125 S. Ct. 738, 756 (2005) ("[W]e reaffirm our holding
in Apprendi: Any fact (other than a prior conviction ) which is
necessary to support a sentence exceeding the maximum authorized
by the facts established by a plea of guilty or a jury verdict
must be admitted by the defendant or proved to a jury beyond a
reasonable doubt.").

2265078, at *8 (S.D.N.Y. July 31, 2006) (same).

H.   Petitioner's Remaining Claims

The balance of Petitioner's claims were raised in his pro se supplemental brief to the Appellate Division, and incorporated by reference into his habeas Petition. As explained supra at 16, Petitioner's pro se brief contains little more than excerpts from, and citations to, transcripts of various legal proceedings, thus making it difficult to discern the precise nature of his claims, much less the legal arguments upon which he relies.  Defendant argues that these remaining claims should be deemed unexhausted.

All state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus. See 28 U.S.C. § 2254(b)(1)(A); Picard v. Connor, 404 U.S. 270, 275-76, 92 S. Ct. 509, 512 (1971); Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997).  To satisfy the exhaustion requirement of 28 U.S.C. § 2254, "it is not sufficient merely that the [petitioner] has been through the state courts." Picard, 404 U.S. at 275-76, 92 S. Ct. at 512.  Rather, the claims must be "fairly presented" to the state courts so that the state has an opportunity to correct any alleged constitutional violations. See Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Picard, 404 U.S. at 276, 92 S. Ct. at 512.

> [T]he ways in which a state defendant may fairly present
> to the state courts the constitutional nature of his
> claim, even without citing chapter and verse of the
> Constitution, include (a) reliance on pertinent federal

cases employing constitutional analysis, (b) reliance on
state cases employing constitutional analysis in like
fact situations, (c) assertion of the claim in terms so
particular as to call to mind a specific right protected
by the Constitution, and (d) allegation of a pattern of
facts that is well within the mainstream of
constitutional litigation.

<u>Daye v. Attorney Gen.</u>, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

With these factors in mind, the Court finds that Petitioner's
<u>pro</u> <u>se</u> brief failed to "fairly present" the constitutional nature
of any of his remaining claims. Petitioner cited no case law,
federal or state, which relied on constitutional principles, and
the cursory description of his claims does not bring to mind or
specify rights protected by the Constitution (for example,
Petitioner referred to a missing witness charge and the failure to
charge a lesser-included offense). Thus, this Court finds that
these remaining claims are unexhausted. Moreover, the claims are
procedurally barred because they are all record-based claims which
must have been raised on direct appeal. Petitioner is entitled to
only one direct appeal, <u>see</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 91 (2d
Cir. 2001)(citing N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R.
§ 500.10(a)); he is therefore procedurally barred from seeking
further relief in the New York courts. Because the remaining
claims raised in the Petition are unexhausted and procedurally
defaulted, this Court cannot consider them unless Petitioner "can
demonstrate cause for the default and actual prejudice as a result
of the alleged violation of federal law, or demonstrate that

41

failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Petitioner has not alleged any cause for his procedural default, thus the Court need not address the issue of prejudice. Petitioner also fails to establish that a miscarriage of justice would occur if his procedurally forfeited claims are not considered by this Court.

In any event, the remaining claims are without merit.

1. <u>Perjury</u>

Petitioner's <u>pro</u> <u>se</u> brief refers to "[f]alse statements given by ADA Christopher Beard, PO Russell Spatafora, PO Thomas Loomis, [and] Jack Rodriguez," and contains extensive excerpts from the prosecutor's statements to the grand jury, and at trial, as well as the testimony of Spatafora, Loomis and Rodriguez.[17] (<u>See</u> Supp. Brf. at 2.)

Petitioner appears to be pointing out apparent inconsistencies in the witnesses' testimony in an effort to establish that the witnesses perjured themselves. However, the existence of errors or inconsistencies in testimony do not alone support a claim of perjury. <u>See</u> <u>United States v. Canova</u>, 412 F.3d 331, 350 (2d Cir. 2005) (citing <u>United States v. Monteleone</u>, 257 F.3d 210, 219 (2d Cir. 2001)). "A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to

_____

[17] The statements by ADA Beard were discussed above as part of Petitioner's claim of prosecutorial misconduct, and will not be revisited here.

provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." <u>See</u> <u>Monteleone</u>, 257 F.3d at 219 (citing <u>United States v. Dunnigan</u>, 507 U.S. 87, 94, 113 S. Ct. 1111, 1117 (1993)).   Petitioner's conclusory allegations of perjury fail to support a finding that any statements made at his trial were made "with the willful intent to provide false testimony."[18]

Construed liberally, Petitioner's claim may be viewed as arguing that the witnesses were not credible.  This Court, however, is required to defer to the jury's assessment of the witnesses' credibility.   Courts do not have the authority to "to assess fact-specific credibility judgments made by jurors, or to weigh conflicting testimony." <u>Perez v. Greiner</u>, No. 01 Civ. 5522 (AKH), 2002 WL 31132872, at *3 (S.D.N.Y. Sept. 25, 2002) (citing <u>Marshall v. Longberger</u>, 459 U.S. 422, 434, 103 S. Ct. 843, 851 (1983)).

Accordingly, in addition to being unexhausted, the Court recommends that Petitioner's perjury claim be dismissed on the merits.

---

[18] Even if Petitioner could demonstrate that a witness or witnesses perjured themselves at his trial, "a showing of perjury at trial does not in itself establish a violation of due process warranting habeas relief." <u>Ortega v. Duncan</u>, 333 F.3d 102, 108 (2d Cir. 2003).  Rather, "when false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." <u>Id.</u> (internal quotation marks omitted).

2.   <u>Jury Selection</u>

Plaintiff makes no specific allegations that the jury selection for his trial violated his constitutional rights. Nor did he make any objections or raise any issues about the jury selection at the time of his trial. (<u>See</u> Supp. Brf. at 1-2.) Rather, he seems to be asking this Court to infer some generalized wrongdoing from the transcript of the jury selection. (<u>See</u> <u>id.</u> at 3-6.) This is clearly insufficient to state a viable, preserved constitutional claim subject to habeas review. <u>See</u> <u>United States v. Malcolm</u>, 432 F.2d 809, 812 (2d Cir. 1970) (A habeas petition may be denied "where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous."); <u>see also</u> <u>Maddox v. Lord</u>, 818 F.2d 1058, 1061 (2d Cir. 1987)(court can deny habeas petition when claims are "merely vague, conclusory, or palpably incredible") (quoting <u>Machibroda v. U.S.</u>, 368 U.S. 487, 495, 82 S. Ct. 510, 514 (1962)).

3.   <u>Jury Instructions</u>

Petitioner appears to make two distinct challenges to the jury instructions given at his first trial, and his subsequent retrial. (<u>See</u> Supp. Brf. at 1-2.)

<u>Lesser-Included Charge</u>

Petitioner appears to argue that the trial court erred at his first trial by refusing to charge the jury on the lesser-included offense of criminal trespass. (<u>See</u> Supp. Brf. at 1.) The Court

presumes that Petitioner is attempting to argue that had the first jury been instructed on a trespass charge, it may have returned a verdict on that charge, and a mistrial could have been averted.

This claim is entirely speculative and not cognizable on habeas review.  The Supreme Court has expressly reserved the question of whether the failure to submit a lesser-included offense in a non-capital case offends due process.  See Beck v. Alabama, 447 U.S. 625, 638 n. 14, 100 S. Ct. 2382, 2390 n. 14 (1980).  Thus, because "there is no 'clearly established' federal right to a charge on a lesser-included offense, a state court's decision not to instruct the jury on a lesser-included offense in a non-capital case necessarily cannot be 'contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Mannix v. Phillips, 390 F. Supp. 2d 280, 295 (S.D.N.Y. 2005).  "Since a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," the Second Circuit has concluded that lower courts are precluded from considering of the issue. Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996).  It follows that "a claim that a state court failed to charge a lesser-included offense is not cognizable in a federal habeas corpus proceeding." Mannix, 390 F. Supp. 2d at 295; accord Lindsey v. Fischer, No. 02 Civ. 1668 LBS, 2004 WL 112884, at *7 (S.D.N.Y. Jan. 23, 2004).

45

Moreover, even if Petitioner was entitled to have had the first jury instructed on the lesser charge, the remedy would have been a new trial. Petitioner was tried again, and the jury instructed on the lesser charge.

Accordingly, Petitioner's lesser-included offense claim should be dismissed as unexhausted and not cognizable on habeas review.

Missing Witness Charge

Petitioner argues that the trial court erred in not delivering a missing witness charge with respect to Rodriguez's daughter, who placed the 911 call on the day of Petitioner's arrest. (See Supp. Brf. at 1.)

The failure to deliver a missing witness charge "does not raise a constitutional issue and cannot serve as the basis for federal habeas relief unless the failure 'so infected the entire trial that the resulting conviction violated due process.'" Nieves v. Fischer, No. 03 Civ. 9803 (DC), 2004 WL 2997860, at *8 (S.D.N.Y. Dec. 28, 2004) (quoting Henderson v. Kibbe, 431 U.S. 145, 154, 97 S. Ct. 1730, 1737 (1977)). The determination of whether to give a missing witness charge resides "in the sound discretion of the trial court." Reid v. Senkowski, 961 F.2d 374, 377 (2d Cir. 1992). Moreover, "decisions in this area will rarely support reversal or habeas relief since reviewing courts recognize the 'aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense'

46

than any reviewing court." <u>Malik v. Kelly</u>, 97 Civ. 4543 (RR), 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999) (quoting <u>United States v. Torres</u>, 845 F.2d 1165, 1171 (2d Cir. 1988)).

In the instant case, the decision to not give a missing witness charge was entirely appropriate.  To warrant a missing witness charge under New York law, the party requesting the charge must show that (1) the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case, (2) the witness would be expected to provide non-cumulative testimony favorable to the party who has not called him, and (3) the witness is available to such party. <u>See People v. Gonzalez</u>, 68 N.Y.2d 424, 427, 509 N.Y.S.2d 796, 799 (1986).

In applying the <u>Gonzalez</u> factors, the trial court determined that testimony from Rodriguez's daughter would "at best, [not] be anything more than cumulative."  (T. 551.)  Thus, in addition to being unexhausted, Petitioner's missing witness claim is without merit.

## CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the Petition for a writ of habeas corpus be denied and dismissed with prejudice.  Further, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court recommends that no certificate of appealability be issued.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (e).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable P. Kevin Castel, United States District Judge, and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Castel.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: April 9, 2007
       New York, New York

Copies mailed to:

Willie Jackson
97-A-6139
Elmira Correctional Facility
P.O. Box 500, 1879 Davis Street
Elmira, New York 14902-0500

Malancha Chanda, Esq.
Office of the Attorney General
State of New York
120 Broadway
New York, New York 10271